UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

TRUSTEES OF THE NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS
PENSION FUND, WELFARE FUND,
ANNUITY FUND, and APPRENTICESHIP,
JOURNEYMAN RETRAINING,
EDUCATIONAL AND INDUSTRY FUND,
TRUSTEES OF THE NEW YORK CITY
CARPENTERS RELIEF AND CHARITY
FUND, and THE NEW YORK CITY AND
VICINITY CARPENTERS LABOR-
MANAGEMENT CORPORATION,

        Plaintiffs,

  -v-                                             No.  16-CV-1895-LTS

A QUEST CORPORATION,

        Defendant.

-------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        Plaintiffs Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund and Apprenticeship, Journeyman Retraining, Educational and Industry Fund (the "ERISA Funds"), Trustees of the New York City Carpenters Relief and Charity Fund (the "Charity Fund," and together with the ERISA Funds, the "Funds"), and The New York City and Vicinity Carpenters Labor-Management Corporation (the "Labor-Management Corporation") (collectively, "Plaintiffs"), bring this civil action pursuant to Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132 and 1145; and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185, against Defendant A Quest Corporation ("A

Quest" or "Defendant").  In the First Claim for Relief of the Amended Complaint, Plaintiffs allege that Defendant breached applicable labor agreements by failing to make required contributions to the ERISA Funds and the Charity Funds.  In their Second Claim for Relief, Plaintiffs seek to recover delinquent contributions, interest on the unpaid contributions, liquidated damages, attorneys' fees, audit fees, and collection costs incurred by Plaintiffs, pursuant to ERISA.  Defendant now moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss both of Plaintiffs' claims.

The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C.S. § 185(a).

The Court has considered the parties' submissions carefully.  For the following reasons, Defendant's motion is granted.

## BACKGROUND

Except as otherwise indicated, the following facts are alleged in the Amended Complaint or drawn from documents annexed thereto.  Plaintiffs "are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with" ERISA and the LMRA, and "are fiduciaries of the ERISA Funds within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21)."  (Amended Complaint ("Am. Compl.") ¶ 4.) Plaintiffs also include "Trustees of a charitable organization established under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3)," and "[t]he Charity Fund is a third party beneficiary entitled to benefits under the" agreements at issue here.  (Id. ¶ 5.)  Plaintiff Labor-Management Corporation "is a labor management corporation operating pursuant to Section 302(c)(9) of the LMRA, 29 U.S.C. § 186(c)(9)" and "is a third party beneficiary entitled to

benefits under the" agreements at issue here.  (Id. ¶ 6.)  "At relevant times, Defendant [A Quest] was an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of Section 501 of the LMRA, 29 U.S.C. § 142."  (Id. ¶ 7.)

        Plaintiffs allege that Defendant performed work "for or on behalf of the New York City School Construction Authority ('SCA')", and that "Defendant agreed to perform over twenty different projects for the SCA involving flooring, woodworking, and other work covered by the Building Construction Agreement" (the "CBA") entered into between the relevant union and the Building Contractors Association, Inc. (Id. ¶¶ 8, 12.)  "Prior to beginning such work, Defendant was required to sign affidavits stating that Defendant and its subcontractors agree to be signatories to, and bound by, the SCA's 'Project Labor Agreement' ('PLA')", which required contractors "to remit contributions on behalf of all employees covered by the PLA in accordance with [] applicable collective bargaining agreements referenced in 'Schedule A' of the PLA."  (Id. ¶¶ 9-10.)  Plaintiffs allege that, "under the PLA, contractors agreeing to be bound by the PLA are also bound to the applicable Funds' Trust Agreements."  (Id. ¶ 11.)  The CBA is one of the agreements listed on Schedule A to the CBA.  (Declaration of Todd Dickerson in Opposition to Defendant's Second Motion to Dismiss ("Dickerson Decl."), Exhibit C, Docket Entry No. 28-3.)  Plaintiffs allege that the PLA bars a contractor from "subcontract[ing] its work to another entity unless the subcontractor agreed to become a party to the PLA."  (Am. Compl. ¶ 19; see also Affidavit of Frank W. Brennan in Support of Defendant's Second Motion to Dismiss, Exhibit 1 (the "PLA"), Docket Entry No. 26-1, Art. 2, § 3, at 13).)

        Plaintiffs further allege that the CBA requires that employers (1) "make specified hourly contributions to the Funds in connection with all work performed in the trade and

geographical jurisdiction of the Union ('Covered Work')"; and (2) "to report to the Funds the number of hours of Covered Work performed by each employee during the preceding month and to furnish their books and payroll records when requested by the Funds for the purpose of conducting an audit to ensure compliance with required benefit contributions." (Am Compl. ¶¶ 13-14.) Plaintiffs further allege that Defendant engaged the services of Amanda Floor Covering, LTD ("Amanda Floor Covering") as a subcontractor "to perform work on its SCA projects without requiring Amanda Floor Covering to agree to become a party the PLA" and that "Amanda Floor Covering failed to remit contributions for the SCA work it performed for Defendant." (Id. ¶ 20.)

Plaintiffs allege that "[t]he Funds conducted two audits of Defendant's books and records," revealing that (1) for "the period July 22, 2010 through December 30, 2012 . . . Defendant had failed to remit contributions in connection with Covered Work performed within this period in the principal amount of $249,143.04," and (2) for "the period December 31, 2012 through December 28, 2014 . . . Defendant had failed to remit contributions in connection with Covered Work performed within this period in the principal amount of $117,513.10." (Id. ¶¶ 16-18.) The document presenting the results of the audit for the period of July 22, 2010 through December 30, 2012, states that the audit was conducted pursuant to the "Independent Outside (SCA/PLA)" agreement, and the document relating to the audit for the period of December 31, 2012 through December 28, 2014, states that the audit was also conducted pursuant to an "Independent Outside (SCA/PLA)" agreement, as well as an "Independent Resilient Floor (SCA/PLA)" agreement. (See Declaration of Frank W. Brennan, Esq. in Support of the Defendant's Second Motion to Dismiss ("Brennan Decl."), Docket Entry Nos. 31-2, 31-3 ("Marked-Up Audits").)

DISCUSSION

Defendant moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiffs' Amended Complaint in its entirety for failure to state a claim upon which relief can be granted.

In determining whether plaintiffs have set forth the "short and plain statement of the claim showing that [they are] entitled to relief" required by the Federal Rules (see Fed. R. Civ. P. 8(a)(2)), the Court looks to whether the allegations in the complaint establish the "facial plausibility" of the plaintiffs' claims.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Such a showing "must be enough to raise a right to relief above the speculative level," comprising "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action."  See Twombly, 550 U.S. at 555 (internal quotation marks omitted).  In deciding a Rule 12(b)(6) motion to dismiss, the Court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiffs.  See Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).

"In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies."  Geron v. Seyfarth Shaw LLP (In re Thelen LLP), 736 F.3d 213, 219 (2d Cir. 2013) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002)).

Plaintiffs allege that Defendant violated the LMRA by failing to comply with the terms of the CBA and the PLA, by (1) subcontracting SCA work to Amanda Floor Covering without requiring it to agree to be bound to the PLA, and (2) allowing Amanda Floor Covering to fail to remit contributions to the Plaintiffs for the SCA work it performed for the Defendant; Plaintiffs further allege that the Funds, as third-party beneficiaries to the PLA and the CBA, are entitled to receive benefits for work performed within the scope of those agreements. (Am. Compl. ¶¶ 21-28.) Plaintiffs also allege that Defendant violated ERISA by failing to remit required contributions to the Plaintiffs in connection with Covered Work performed from July 22, 2010, through December 28, 2014, in violation of the CBA, to which it was bound. (Am. Compl. ¶¶ 29-36.)

In its motion papers, in addition to disputing a number of Plaintiffs' factual allegations, Defendant asserts that Plaintiffs' claims are based on audits conducted pursuant to agreements that Plaintiffs do not plead are related to the PLA or otherwise binding on Defendant, and therefore the Amended Complaint must be dismissed in its entirety. (Def. Opening Br., Docket Entry No. 25, at 12-13.) In opposition to Defendant's motion, Plaintiffs assert that "even if the auditors did base their reports on a different collective bargaining agreement," the discrepancy is irrelevant "given the overlap in the definition of covered work under these agreements," and argue that Plaintiffs have sufficiently pled claims for relief, "regardless of any purported inconsistencies in the audit reports." (Pl. Opposition Br., at 10-11.) Plaintiffs' argument is unavailing.

Plaintiffs' LMRA and ERISA claims are not "facially plausible," as the Amended Complaint fails to allege facts demonstrating that it is plausible, rather than merely possible, that the findings of the two independent audits, which do not refer to the CBA, demonstrate that

Defendant breached its obligations pursuant to the PLA and the CBA.  See Iqbal, 556 U.S. at 678-79 (2009).  Prior to beginning the work at issue, the Defendant allegedly agreed to be a signatory to, and bound by, the SCA's PLA, which required Defendant "to remit contributions on behalf of all employees covered by the PLA in accordance with [] applicable collective bargaining agreements referenced in 'Schedule A' of the PLA."  (See Am. Compl. ¶¶ 9-10.)  The findings of the two audits that are referenced in Plaintiffs' pleading expressly state that they were conducted pursuant to an "Independent Outside (SCA/PLA)" agreement and an "Independent Resilient Floor (SCA/PLA)" agreement.  (See Marked-Up Audits.)  In opposition to Defendant's motion, Plaintiffs proffer a copy of the PLA's Schedule A which was obtained from an archived version of the SCA's website on May 24, 2016.  (See Dickerson Decl., Exhibit C, Docket Entry No. 28-3.)  Neither the "Independent Outside (SCA/PLA)" agreement nor the "Independent Resilient Floor (SCA/PLA)" agreement is listed on "Schedule A."  (See id.)  Therefore, the audit findings are not connected with any agreement to which Plaintiffs have demonstrated that Defendant was bound.  Nor have Plaintiffs alleged facts demonstrating that any "overlap in the definition of covered work" among the various agreements would obligate Defendant or its subcontractors to comply with agreements that are not listed in Schedule A of the PLA.

       Accordingly, Plaintiffs have not pled "factual content that allows the [C]ourt to draw the reasonable inference that" the audit findings demonstrate that Defendant failed to comply with its (or its subcontractors') obligations, pursuant to the PLA and the CBA, to remit contributions for the SCA work it (or its subcontractors) performed.  See Iqbal, 556 U.S. at 678.  Plaintiffs thus have not sufficiently pled that Defendant is liable to them under the LMRA and ERISA.  The Court notes that Plaintiffs have already taken the opportunity to amend their pleading once and they have not requested further leave to amend.

Defendant's motion to dismiss the Amended Complaint is therefore granted.

Without citing any specific authority, Defendant requests that the Court grant it "all costs, disbursements and reasonable attorney's fees incurred in having to make the instant motion and/or having to defend the instant action." (See Def. Opening Br., at 18.) The Court declines Defendant's apparent invitation to invoke its inherent powers, and denies the request for attorney's fees.

CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Amended Complaint is granted, and its request for an award of its attorneys' fees and costs is denied. The Clerk of Court is directed to enter judgment dismissing the Amended Complaint and close this case.

This Memorandum Opinion and Order resolves Docket Entry No. 24.

SO ORDERED.

Dated: New York, New York
       March 30, 2017

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge